IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHARLES EDWARD MELVIN, JR.,          )
                                      )
                    Plaintiff,        )
                                      )
        v.                            )        1:18CV1051
                                      )
ANDREW SAUL,                          )
Commissioner of Social Security,      )
                                      )
                    Defendant.        )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Charles Edward Melvin, Jr. ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on December 8, 2014, alleging a disability onset date of June 30, 2014 in both applications. (Tr. at 10, 189-98.)[1] His applications were denied initially (Tr. at 61-80, 107-12) and upon reconsideration (Tr. at 81-

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #9].

106, 120-131). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 132-36.) On May 1, 2017, Plaintiff, along with his attorney, attended the subsequent hearing, at which an impartial vocational expert testified via telephone. (Tr. at 10, 28-60.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 17), and, on November 5, 2018, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II. <u>LEGAL STANDARD</u>

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hancock v. Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1993) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.  DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 12.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> left hip pain, status-post total hip replacement and redo surgeries; bilateral shoulder pain, status-post surgery; and cervical degenerative disc disease[.]

(Id.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 13.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform light work with the following, further limitations:

> [H]e can lift/carry and push/pull less than 10 pounds occasionally and frequently with the right upper extremity, sit for six hours, stand for two hours, and walk for two hours with the occasional use of an assistive device. He can

5

> frequently balance, stoop, and handle/finger with his right hand. He can occasionally work in vibration, at unprotected heights, around moving mechanical parts, and in extreme cold. He can never crawl, or climb ladders, ropes or scaffolds.

(Id.) Based on this determination, the ALJ found at step four of the analysis that Plaintiff could not perform any of his past relevant work. (Tr. at 16.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 16-17.)

Plaintiff now contends that substantial evidence fails to support the RFC in the present case. In particular, Plaintiff argues that the RFC only described the lifting and carrying restrictions of his right upper extremity and failed to describe his maximum lifting and carrying abilities using his upper extremities combined. (Pl.'s Br. [Doc. #14] at 3-6.) Plaintiff further contends that the RFC materially differs from the hypotheticals to the vocational expert at step five of the analysis, in which the ALJ "specified an RFC that would allow maximum overall lifting and carrying capacity of 20 pounds occasionally and 10 pounds frequently with right arm lifting and carrying limited to less than 10 pounds." (Id. at 5.)

A plain reading of the RFC belies Plaintiff's assertion. In the RFC, as written, the ALJ clearly found that that Plaintiff could perform "light work as defined in 20 CFR 404.1567(b) and 415.967(b)" with further additional restrictions including to accommodate more limited use of his right arm. (Tr. at 13.) "Light work" is specifically defined in the Social Security regulations to mean work that "involve(s) lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). Therefore, the RFC finding for "light work" necessarily includes the lifting

6

restrictions contained in the regulations, with Plaintiff's further restrictions then specifically noted, and the RFC does not differ from the hypotheticals provided to the vocational expert.

Plaintiff argues that the ALJ's reference to "light work" does not cure the alleged deficiency, as the RFC included further limitations which are incompatible with light work, particularly the inability to stand or walk for up to 6 hours per day. (Pl.'s Br. at 6-7.) In this regard, it is undisputed that "the <u>full</u> range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83–10, <u>Titles II And XVI: Determining Capability To Do Other Work--The Medical-Vocational Rules Of Appendix 2</u>, 1983 WL 31251, at *5. However, the RFC is again clear on its face that Plaintiff was not able to perform the <u>full</u> range of light work; that is why the testimony of a vocational expert was required. See SSR 83–12, <u>Titles II And XVI: Capability To Do Other Work--The Medical-Vocational Rules As A Framework For Evaluating Exertional Limitations Within A Range Of Work Or Between Ranges Of Work</u>, 1983 WL 31253, at *4. Here, the RFC provides that Plaintiff remains capable of performing light work "except" to the extent he is further limited by additional restrictions. (Tr. at 13.) The inclusion of additional limitations do not negate Plaintiff's ability to perform the lifting and carrying requirements of light work, as Plaintiff suggests. See <u>Putnam v. Astrue</u>, No. 10-cv-371, 2011 WL 3320518, at *4 (D. N.H. Aug. 1, 2011) ("[C]laimant's inability to perform the full range of light work[, including limitations on standing and walking, did] not compel the conclusion that he is only capable of less physically demanding (i.e., sedentary) work, nor [did] it compel the conclusion that he is disabled."). Instead, where a claimant's RFC includes significant additional exertional or non-exertional limitations, the ALJ is required to consult a vocational expert to determine the

extent to which the claimant's restrictions impact his ability to work. See Heggarty v. Sullivan, 947 F.2d 990, 995–96 (1st Cir. 1991); Buckner v. Colvin, 2014 WL 3962463 (M.D.N.C. Aug. 13, 2014) (finding that where "the ALJ finds that a claimant must alternate between sitting and standing and thus can perform less than a full range of light work, the ALJ is permitted to rely on the testimony of a vocational expert regarding the effect of that restriction on the occupational base.").

In the present case, the ALJ did just that. He found that overall, Plaintiff could meet the lifting and carrying requirements of light work, but that he was additionally limited to lifting, carrying, pushing, and pulling less than 10 pounds occasionally with his right upper extremity, walking and standing for two hours, and myriad other limitations as set out above. (Tr. at 13.) When presented with these limitations at step five of the sequential analysis, the vocational expert testified that, although Plaintiff's reduced ability to stand and walk further eroded his ability to perform light work, he could perform several sedentary jobs available in the national economy. (Tr. at 56-57.) The ALJ adopted this testimony. (Tr. at 17.) At no point did either the ALJ or the vocational expert suggest that the identification of sedentary jobs somehow precluded Plaintiff from performing the light lifting previously included in the RFC. In fact, as acknowledged by Plaintiff himself, in communicating hypotheticals to the vocational expert, the ALJ specified an individual who can lift and carry 20 pounds occasionally and 10 pounds frequently. (Tr. at 55; Pl.'s Br. at 5.)[4]

---

[4] Plaintiff may be contending that the ALJ should have classified Plaintiff's physical RFC as "sedentary" rather "light", given the standing and walking restrictions included in the RFC and the vocational expert's testimony identifying only sedentary jobs. However, even if there were an error in this regard, it is harmless. Notably, this is not a case where the Medical-Vocational Guidelines ("the Grids") would have directed a finding of "disabled" if Plaintiff were limited to sedentary work. Indeed, the State Medical Reviewer Dr. Singh, like the ALJ, found Plaintiff capable of lifting 20 pounds occasionally and 10 pounds frequently and standing and

8

Finally, to the extent Plaintiff contends that there is an unreconciled inconsistency between Plaintiff's ability to perform lifting and carrying consistent with light work and the greater restrictions regarding his right arm, a claimant "does not need two fully functioning upper extremities to perform light work." Campbell v. Comm'r of Soc. Sec., No. 4:13-CV-00050, 2014 WL 7011116, at *8 (W.D. Va. Dec. 11, 2014); Carey v. Apfel, 230 F.3d 131, 146 (5th Cir. 2000) (substantial evidence supported ALJ's finding that amputee could perform specific light jobs with remaining arm and hand); Thomas v. Comm'r, Soc. Sec. Admin., Civil No. SAG–11–3683, 2013 WL 66538, at *1 (D. Md. Jan. 2, 2013) (same)). In the present case, the ALJ found that overall, Plaintiff could meet the lifting and carrying requirements of light work, but that he was additionally limited to lifting, carrying, pushing, and pulling less than 10 pounds occasionally with his right upper extremity and only frequently handling and fingering with his right hand. (Tr. at 13.)[5] Although Plaintiff now argues that the ALJ's failure to identify the exact weight Plaintiff could lift with his right arm (i.e., between 0 and slightly less than 10 pounds) is reversible error, as "an inability to lift or carry more than 1 or 2 pounds

---

walking up to 2 hours, but Dr. Singh used the applicable "sedentary" Grid at 201.21 as a framework, which nevertheless directed a finding of "not disabled." The ALJ used the "light" Grid at 202.20 as a framework, but found that Plaintiff was not capable of the full range of light work based on the additional limitations included in the RFC, and then consulted the vocational expert, who identified other work that Plaintiff could perform, specifically identifying multiple sedentary occupations, taking into account all of the restrictions provided in the hypotheticals and included in the RFC. In the circumstances, it is not clear that there would be any error, see Foxworth v. Colvin, 249 F. Supp. 3d 585 (2017) (finding no error in the ALJ's RFC determination of light, even though the vocational expert identified sedentary positions at step five), and in any event any alleged error in failing to reduce Plaintiff's RFC to sedentary based on the standing and walking restriction is harmless. See Galloway v. Astrue, 2011 WL 6339782 (M.D.N.C. Dec. 19, 2011) (finding any error as to Grids is harmless where the Grids direct a finding of "not disabled" whether sedentary or light).

[5] This is consistent with Plaintiff's testimony at the hearing that only his right shoulder was bothering him, not both (Tr. at 42), and that he had to pick his grandchildren up with his left arm rather than his right arm (Tr. at 48, 53). Moreover, Plaintiff does not challenge the substance of the ALJ's findings, and the ALJ supported his conclusions in detail in the decision, which is supported by substantial evidence in the record.

would erode the unskilled sedentary occupational base significantly" (see Pl.'s Br. at 8) (quoting SSR 96-9p), such a finding under SSR 96-9p must be premised on a claimant's *overall* ability to lift or carry, not his ability to do so with his most impaired extremity alone. As explained previously, the ALJ found Plaintiff able to perform the lifting and carrying requirements of light work, meaning that, overall, Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. (Tr. at 13.) Plaintiff points to no evidence challenging this finding. Moreover, the vocational expert specifically addressed the limitation on Plaintiff's right upper extremity, noting that the Dictionary of Occupational Titles does not address "right versus left upper extremity" but that the additional limitations on Plaintiff's right upper extremity would not preclude the sedentary occupations she identified, based on her experience in job placement, her analysis, and her professional research. (Tr. at 56-57.) Plaintiff has failed to point to reversible error, and the Court finds no basis for remand.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. #13] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #15] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 13th day of February, 2020.

/s/ Joi Elizabeth Peake
United States Magistrate Judge